IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03020-M

MARKUS ODON McCORMICK, )
)
        Plaintiff, )
)
v. ) ORDER
)
SASHA GRAHAM, et al., )
)
        Defendants. )

This cause is before the court on plaintiff's pending motions. See [D.E. 56, 70, 73, 76].

1) Plaintiff's April 3, 2023, motion for leave to file an amended complaint. Mot. [D.E. 56].

The court previously allowed plaintiff's Fourth Amendment claims under 42 U.S.C. § 1983 to proceed against Fayetteville Police Department ("FPD") Officers Sasha Graham ("Graham"), Kelton Glorafield ("Glorafield"), and Joshua Bass ("Bass"). See Order [D.E. 15] at 5.

Plaintiff's proposed amended complaint generally alleges violations of his Fourth, Fifth, and Fourteenth Amendment rights. See [D.E. 56] at 4. In his First Cause of Action, plaintiff specifically alleges that, on January 18, 2019, Glorafield arrested an alleged prostitution victim during a traffic stop; on January 23, 2019, FPD Detective Everett Hockenberry ("Hockenberry") interviewed this alleged victim who denied prostituting for plaintiff in November 2018 and on specific dates in late December 2018; Hockenberry, "with deliberate indifference to plaintiff's 14th amendment rights . . . fabricated his police report," stating the victim "remembered a distinct date range in late December prostituting at the hotel for plaintiff and co-defendants"; Glorafield and Hockenberry "had a meeting of the minds" with Officer Graham, who had previously charged

plaintiff with similar charges in 2015, to "share his fabricated police report" and turn the case over to Graham; on January 24, 2019, Graham and Detective Hutchens conducted another interview of the alleged prostitution victim who again denied prostituting for plaintiff in November 2018; Graham and Hockenberry "submitted their recorded interviews [and] police reports to their supervisor," Mike Hardin ("Hardin"); Hardin is "a person with final policy making authority [sic]" for the FPD; Graham, "with deliberate indifference to plaintiff's constitutional rights . . . maliciously appeared before a magistrate and intentionally stated a series of untrue events to magistrate to establish probable cause to arrest plaintiff with an offense date of 11-25-2018 and acted in concert with [Glorafield] to falsely arrest plaintiff" on February 4, 2019. Id. at 2–4.

In his Second Cause of Action, plaintiff alleges that Hockenberry "is liable on claims of obstruction of justice, fabricating evidence, intentional infliction of emotional distress, negligence, deprivation of state and federal constitutional rights [sic]." Id. at 4.

In his Third Cause of Action, plaintiff alleges that Hardin was the supervisor for FPD's Human Trafficking Unit and that Graham, Glorafield, Hockenberry, and Bass were under his "direction and control." Id. at 5. Plaintiff further alleges that, "acting under color of law and pursuant to official policy or custom," Hardin and the City of Fayetteville:

> knowingly, recklessly, or with deliberate indifference and callous disregard of plaintiff's rights failed to train, instruct, supervise, control and discipline on a continuing basis defendant police officers in their duties to refrain from 1) unlawfully and maliciously harassing [plaintiff] . . . 2) unlawfully arresting, imprisoning and prosecuting [plaintiff], 3) intentionally, maliciously fabricating evidence, 4) intentionally, maliciously swearing untruthfully in front of judicial officials, and 5) conspiring to violate [plaintiff's] rights . . . guaranteed by the Constitution and Laws of the State of N.C.

Id. at 5–6.

Plaintiff also alleges that Hardin and the City of Fayetteville "directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of defendant police officers." Id. at 6. Plaintiff alleges that Hardin and the City of Fayetteville, "had knowledge the wrongs conspired to be done [sic], as here alleged, were about to be committed" or would have such knowledge had they "diligently exercised their duties to instruct, supervise, train, control, and discipline on a continuing basis." Id. Plaintiff contends that Hardin and the City of Fayetteville had the power to prevent "the commission of said wrongs" had they exercised reasonable diligence, and their refusal to do so amounts to deliberate indifference or callous disregard to plaintiff's rights. Id. Plaintiff states that Hardin "is liable on claims of failure to train, supervise or discipline, civil conspiracy, intentional infliction of emotional distress, deprivation of State and Federal Constitutional rights, Supervisory liability [sic]." Id. at 7.

In his Fourth Cause of Action, plaintiff alleges the City of Fayetteville is liable on claims to failure to train Monell/municipal liability, state common law torts, negligence [sic]." Id. Plaintiff contends the City of Fayetteville has direct oversight over all law enforcement personnel, including defendants, "and was either directly involved in or knew of their efforts to arrest Plaintiff without the requisite probable cause and that there was a pattern and practice of arrests without probable cause." Id. Plaintiff alleges that Hardin:

> authorized the arrest of plaintiff without probable cause by approving a warrant application bearing offense date of 11-25-2018 based on unreliable information and encouraged the prosecution of plaintiff after becoming aware of fabricated evidence and that because of [Hardin's] inaction, plaintiff's . . . rights were violated and the prosecution of plaintiff was allowed to continue until the Honorable District Court Judge Caitlyn Evans ruled the charges lacked probable cause and dismissed them on 4-4-2019."

Id. at 7–8.

3

Plaintiff alleges that Hardin "made the decision to allow plaintiff's false arrest on 2-4-2019," and that, "because the high level supervisor was aware of the fabricated police reports in the promoting of prostitution investigation and failed to intervene, [Hardin] effectively ratified and approved defendants' misconduct sufficient for Monell/municipal liability [sic]." Id. at 8.

Plaintiff alleges Graham, Hardin, Hockenberry, Bass, and Glorafield "acted under color of statutes, customs, ordinances, and usage of the State of North Carolina, The city of Fayetteville, and the FPD [sic]." Id. Plaintiff also sues the City of Fayetteville "in its official capacity" and contends that the city "waives governmental immunity for its officers by the purchasing of insurance for its officers [sic]." Id. at 8–9.

In his Fifth Cause of Action, plaintiff alleges a John Doe Surety Company is directly liable to plaintiff under plaintiff's suit against the City of Fayetteville and FPD because these entities have "acquired insurance policies or participated in risk pools insuring against liability for the negligent acts of their agents or employees [sic]." Id. at 9. Thus, he argues, this John Doe Surety Company is liable to plaintiff "as sureties on the . . . statutory bond [sic]." Id. Plaintiff seeks to sue the surety in its "individual and official capacity [sic]." Id. at 10.

Defendants oppose the motion for leave to amend, arguing, *inter alia*, the proposed amended complaint would not survive a motion to dismiss. See Defs.' Resp. [D.E. 71].

In reply, plaintiff argues, *inter alia*, that, although the court previously dismissed claims against Hardin, Hockenberry, and the City of Fayetteville, he filed "a more colorful complaint [sic] that's more detailed, better plead[ed], with no threadbare recitals or no conclusory allegations." Pl.'s Reply [D.E. 72] at 3. Plaintiff also argues that his claims against Hockenberry are not barred pursuant to Heck v. Humphrey, 512 U.S. 477 (1994) ("Heck"), because "the sentence plaintiff

4

[now] is serving is under case file #19CRS54261; #19CRS54262 [with] offense date[s] [of] 12-20-2018 and 9-18-2018, when plaintiff's allegations listed in the complaint are for case file #'s 19CR051566 & 19CR051565 [with an] offense date [of] 11-25-2018." Id. at 4. Plaintiff reiterates his contention that he alleges sufficient facts for a municipal liability claim. Id.

Although plaintiff requires leave to amend, see Fed. R. Civ. P. 15(a)(2), a court should freely grant leave to amend a complaint unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (quotation omitted); see Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986) ("Leave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face.").

In evaluating futility, the court considers whether the proposed amended complaint would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021) (noting Fourth Circuit precedent provides that "district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." (citation omitted)); Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011) ("Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: '[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" (citation and internal quotation marks omitted)).

The court has reviewed the proposed amended complaint under the governing standard. First, plaintiff's claims against Hockenberry involve his purportedly fabricated police report

5

documenting that, in an interview, an alleged prostitution victim "remembered a distinct date range in late December prostituting at the hotel for plaintiff and co-defendants." Mot. [D.E. 56] at 2–3. In his prior motion to amend, plaintiff cited these dates in Hockenberry's report as between December 20 and 26, 2018. See Mot. [D.E. 29] at 1–2. As the court noted in its prior order, see Order [D.E. 37] at 5–6, publicly available records reflect that plaintiff is serving a prison sentence involving convictions for human trafficking and promoting prostitution with an offense date of December 20, 2018, see N.C. Dep't of Adult Correction, Offender Pub. Info., https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0878635&searchOffenderId=0878635&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (search by inmate number) (last visited Oct. 30, 2023). As the prior order also noted, related claims against Hockenberry are Heck-barred because plaintiff has not shown that this underlying conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486–87.

Although plaintiff contends that his proposed amended complaint is not Heck-barred because it involves claims regarding cases with an offense date of November 25, 2018, see Pl.'s Reply [D.E. 72] at 4, he fails to plausibly allege that Hockenberry caused a seizure of plaintiff on criminal charges involving that offense date. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level"); see Humbert v. Mayor & City Council of Balt. City, 866 F.3d 546, 555 (4th Cir. 2017); Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012). Although plaintiff also claims Hockenberry was responsible for intentional infliction of emotional distress, he has not plausibly alleged the requisite

"extreme and outrageous conduct" that resulted in "severe emotional distress" as required to establish this claim. See Holleman v. Aiken, 193 N.C. App. 484, 501, 668 S.E.2d 579, 590 (2008). Further, although plaintiff also claims there was a "meeting of the minds" between Hockenberry, Graham, and Glorafield to "share his fabricated police report and turn the case over to Graham," see Mot. [D.E. 56] at 3, this conclusory claim amounts to mere "labels and conclusions," Twombly, 550 U.S. at 555, and is too threadbare to state a viable civil conspiracy claim, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); see Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996).

Next, plaintiff's claims as to Hardin are premised on his role as the FPD Human Trafficking Unit supervisor, his purported failure to train the other defendants under his supervision, and his alleged authorization of plaintiff's arrest without probable cause when he relied upon "unreliable information" from his officers. Succinctly stated, plaintiff's claims as to Hardin are premised on *respondeat superior* or amount to mere "labels and conclusions," Twombly, 550 U.S. at 555, and therefore fail either to state a viable § 1983 claim against Hardin in his individual or official capacity or to state a viable supervisory liability claim under the governing standard, see Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023) (noting "a supervisor's 'mere knowledge' that his subordinates are engaged in unconstitutional conduct is not enough"); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (requiring, *inter alia*, subordinate conduct be "pervasive," meaning "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the

7

subordinate poses an unreasonable risk of harm of constitutional injury." (quotation omitted)); see also Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984) (noting a plaintiff "[o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct.").

Next, because the proposed amended complaint lacks factual allegations of widespread or flagrant constitutional violations, does not identify specific inadequate training or unconstitutional policies, and otherwise does not plausibly allege that final policymakers or supervisors acted with deliberate indifference as to his purportedly unconstitutional seizure, plaintiff's bald, speculative allegations again amount to mere "labels and conclusions" that fail to state a viable municipal liability claim. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 694 (1978) (noting that a municipality both "cannot be held liable under § 1983 on a *respondeat superior* theory" and also "cannot be held liable *solely* because it employs a tortfeasor" (emphasis original)); see Connick v. Thompson, 563 U.S. 51, 61 (2011) (noting: "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." (citations omitted)); City of Oklahoma v. Tuttle, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of

8

the municipality, and the causal connection between the 'policy' and the constitutional deprivation." (footnotes omitted)); Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 533 (4th Cir. 2022) ("Monell permits suits against a municipality for a federal constitutional deprivation only when the municipality undertook the allegedly unconstitutional action pursuant to an 'official policy' or 'custom.'" (citation omitted)); Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014) (requiring, under a "condonation" theory, a municipality's "failure to put a stop to or correct a widespread pattern of unconstitutional conduct"); Lytle v. Doyle, 326 F.3d 463, 472 (4th Cir. 2003) ("A 'final policymaker' for the purposes of municipal liability is someone who has 'the responsibility and authority to implement final municipal policy with respect to a particular course of action.' A local government may be held liable for a decision made by an individual 'whose edicts or acts may fairly be said to represent official policy.' However, merely 'going along with the discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy.'" (internal citations omitted)); Jones v. Wellham, 104 F.3d 620, 627 (4th Cir. 1997) ("The causation requirement for imposing municipal liability for policy maker decisions not themselves unconstitutional is a stringent one deriving from the necessity to avoid the effective, but forbidden, imposition of vicarious liability on municipalities." (citations omitted)); see also Knight v. Mallard, No. 7:06-CV-64-D, 2006 WL 8439129, at *4 (E.D.N.C. Sept. 7, 2006) (discussing Monell liability).

Next, although the proposed amended complaint re-alleges claims against defendants Graham, Bass, and Glorafield, these allegations either duplicate the claims already allowed to proceed or otherwise fail to state a claim sufficient to survive a motion to dismiss. See In re Triangle, 988 F.3d at 750; Hinkle, 81 F.3d at 421.

9

The court now considers plaintiff's attempt to add as a defendant a John Doe Surety or Insurance Company. Although a surety is a necessary party in cases against a sheriff or sheriff's deputies in their official capacity, see Morgan v. Spivey, No. 5:16-CV-365-FL, 2017 WL 4399539, at *6 (E.D.N.C. Sept. 29, 2017) (citing N.C. Gen. Stat. § 58-76-5), plaintiff has not named such defendants. Because, as noted above, the claims against the City of Fayetteville in the proposed amended complaint would not survive a motion to dismiss, see In re Triangle, 988 F.3d at 750, plaintiff's request to add as a defendant the city's John Doe Insurance Company likewise is futile.

In sum, because the proposed amended complaint is futile, see id.; Katyle, 637 F.3d at 471; Laber, 438 F.3d at 426; Johnson, 785 F.2d at 510, the court DENIES the motion for leave to amend.

Finally, the court notes that plaintiff has moved to amend his complaint four times. See [D.E. 10, 29, 40, 56]. These repeated motions to amend have slowed discovery and delayed resolution of this case. The court WARNS plaintiff that further attempts to amend the complaint may be denied as prejudicial to defendants.

2) Plaintiff's motion for an "injunction freezing defendants' assets." Mot. [D.E. 70].

Plaintiff seeks an order "prohibiting any defendant involved in this action from transferring or otherwise disposing of a specified amount of money, property or assets [sic]." Mot. [D.E. 70] at 2. In support, plaintiff contends: he seeks substantial damages; the court's December 15, 2022, order "clearly stated that the 2-4-2019 false arrest lacked probable clause and plaintiff's 4th Amendment Constitutional Rights were violated on that day [sic]"; courts have "held 'malice' can be inferred from a lack of probable cause" and have found individuals falsely arrested are entitled to compensatory damages for loss of liberty and physical and emotional distress; and a preliminary injunction should issues because he is likely to prevail on the merits in his suit. Id. at 1–2.

10

Plaintiff misconstrues the court's December 15, 2022, order. The court did not find that his arrest lacked probable cause or that his constitutional rights were violated. Instead, the court's order merely found that his "Fourth Amendment claims against FPD officers Graham, Bass, and Glorafield are not clearly frivolous." Order [D.E. 15] at 5.

In short, plaintiff has not shown a likelihood of success on the merits, irreparable harm in the absence of the requested relief, that the balance of equity tips in his favor, or that the injunction would be in the public interest. Cf. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Plaintiff also fails to make any "clear showing" of entitlement to the requested relief. See Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam). Accordingly, the court DENIES this motion [D.E. 70].

3) Plaintiff's motion for a pretrial conference. Mot. [D.E. 73].

In support of this motion for a pretrial conference, plaintiff argues: he served discovery requests but has received no response; he has not received responses to his letters to defendants' counsel seeking to discuss discovery; he "clarified his intentions in pleadings to where there is no reason protective order to remain [sic] and plaintiff has made a modification of protective order to the courts [sic]"; the purpose of the proposed pretrial conference is "to eliminate vagueness of the issues [sic]" and to obtain "advance rulings on admissibility of evidence"; and a conference under Federal Rule of Civil Procedure 16 will expedite the litigation. See Mot. [D.E. 73] at 1–2.

Defendants oppose the motion. See [D.E. 74] (arguing plaintiff's motion is premature).

The court's prior orders stayed discovery, see Order [D.E. 60], and continued that stay, see Order [D.E. 67]. As noted above, discovery has been delayed due to plaintiff's various attempts

11

to amend his complaint. Succinctly stated, plaintiff's instant motion for a pretrial conference is premature. See McCargo v. Hedrick, 545 F.2d 393, 397 (4th Cir. 1976) (noting pretrial conference under Fed. R. Civ. P. 16 is not compulsory); see also E.D.N.C. Local Civil Rule 16.1 (discussing final civil pretrial conference). Accordingly, the court DENIES the motion [D.E. 73].

4) Plaintiff's motion for a protective order. Mot. [D.E. 76].

In support of this motion, plaintiff argues that, because he is unsure how long the court's stay of discovery will last, there is a need to preserve evidence in this case. See Mot. [D.E. 76] at 1–2. Plaintiff specifically seeks "all telephonic calls and video visitations" at the Cumberland County Detention Center from: February 4, 2019, to May 25, 2019; November 20, 2019, to July 29, 2019; and December 11 to 16, 2020; and December 21, 2020, to July 2, 2021. Id. at 2.

Presuming these records still exist, the court GRANTS IN PART this motion to the extent that directing defendants to preserve the requested evidence satisfies plaintiff's request.

### Conclusion:

In sum, the court: DENIES the motion for leave to file an amended complaint as futile [D.E. 56]; DENIES the motion to freeze defendants' assets [D.E. 70]; DENIES the motion for a pretrial conference [D.E. 73]; GRANTS IN PART the motion for a protective order [D.E. 76] to the extent noted above; LIFTS the stay of discovery; and REFERS the action to Magistrate Judge Robert B. Jones, Jr. for entry of a new scheduling order. The court further finds good cause shown and GRANTS the pending motion to withdraw as attorney as to Attorney Whyte [D.E. 78].

SO ORDERED this 27th day of November, 2023.

RICHARD E. MYERS II
Chief United States District Judge

12